UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EAST COAST ADVANCED PLASTIC SURGERY, LLC *and* MARCELLA LIVOLSI, <br><br> Plaintiffs, <br><br> -v- <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, *and* MULTIPLAN, INC., <br><br> Defendants. | 25 Civ. 255 (PAE) |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY *and* CONNECTICUT GENERAL LIFE INSURANCE COMPANY, <br><br> Counter Plaintiffs, <br><br> -v- <br><br> EAST COAST ADVANCED PLASTIC SURGERY, LLC, <br><br> Counter Defendant. | 25 Civ. 1686 (PAE) <br><br> OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

This decision resolves parallel motions to dismiss in two related insurance-fraud cases,

25 Civ. 1686 (the "Cigna Action") and 25 Civ. 255 (the "ECAPS Action").

The Cigna Action, filed first in the United States District Court for the District of

Connecticut and transferred into this District, involves claims brought by Cigna Health and Life

Insurance Company and the Connecticut General Life Insurance Company (collectively,

"Cigna") against East Coast Advanced Plastic Surgery, LLC ("ECAPS"). Cigna centrally claims

that ECAPS, an out-of-network health care provider, engaged in fraudulent billing practices that

1

resulted in Cigna, a health insurer and claims administrator, overpaying by $8.5 million for certain ECAPS services. Cigna brings claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3) *et seq.*, the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42–110b(a) *et seq.*, and the Connecticut General Theft statute, Conn. Gen. Stat. § 52-564, in addition to claims for state common-law fraud, negligent misrepresentation, unjust enrichment, and conversion.

ECAPS countersued. It, along with plaintiff Marcella Livolsi, a Cigna plan participant who received out-of-network services from ECAPS, claim that Cigna failed to pay what it owes for certain services provided to patients enrolled in Cigna-administered employer health plans. ECAPS brings claims against Cigna under the federal No Surprises Act ("NSA"), 29 U.S.C. § 1185e *et seq.*; the DJA; CUTPA; and under a state-law breach of contract theory. Livolsi sues ECAPS under ERISA. ECAPS also brings the DJA and breach-of-contract claims against Multiplan, Inc. ("Multiplan" or "MPI"), a health insurance intermediary that provided Cigna plan participants with certain access rights to ECAPS's out-of-network health care services.

Before the Court are (1) ECAPS's motions to dismiss Cigna's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (2) Cigna's motion to dismiss ECAPS's Complaint under Rule 12(b)(6), and (3) Multiplan's motion to dismiss ECAPS's Complaint under Rule 12(b)(6). For the reasons that follow, the Court grants in part and denies in part ECAPS's motion to dismiss Cigna's Complaint; and grants in full Cigna's and Multiplan's motions to dismiss ECAPS's Complaint.

I.    **Background**[1]

A.    **The Parties**

Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company are health insurance companies organized under the laws of, and with principal places of business in, Connecticut. Cigna Compl. ¶¶ 12–13. Both are wholly owned subsidiaries of The Cigna Group. *Id.* ¶¶ 13–14. Cigna is a managed care company that administers employer-sponsored health insurance plans. *Id.* ¶ 20; ECAPS Compl. ¶¶ 36–37. It serves as a claims administrator and assumes fiduciary responsibility over the administration of such plans. Cigna Compl. ¶¶ 20–22; ECAPS Compl. ¶¶ 36–37. Cigna provides, *inter alia*, health insurance-related services and employee health claim administration services to commercial employers and their employees nationwide. *Id.*

Multiplan is a corporation organized under Delaware law, with a principal place of business in New York. *Id.* ¶ 15. Multiplan is a preferred provider organization ("PPO"), a health insurance intermediary that, as alleged, connects out-of-network medical providers such as ECAPS with insurance providers such as Cigna. *Id.* ¶¶ 15, 28–29. Multiplan "assembles

---

[1] The following facts are drawn principally from the parties' respective complaints, *see* No. 25 Civ. 255 at Dkt. 1 ("ECAPS Compl."); No. 25 Civ. 1686 at Dkt. 1 ("Cigna Compl."), and documents incorporated by reference or annexed to them, *see DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The parties are in substantial agreement as to the central facts underlying the dispute. To the extent only one party alleges a fact, such will be noted. *See, e.g.*, Sec. 1.D, *infra*.

In resolving the Rule 12(b)(1) motion brought by ECAPS, the court is permitted to consider, in addition to the pleadings, "evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted)). Here, the Court has considered the declarations by Cyrus Loghmanee, *see* 25. Civ. 1686 at Dkt. 50-1 ("Loghmanee Decl.") and Elizabeth Wolstein, *id.* at Dkt. 50-2 ("Wolstein Decl.").

networks of medical providers that are contractually obligated to provide their medical services to patients" and "sells access to [this] network . . . via contracts that allow the health plan or its fiduciary to provide plan members with access to medical services offered by the providers" in that network. *Id.* ¶ 29.

ECAPS is a New Jersey-based medical practice that specializes in post-mastectomy breast reconstruction surgery. *Id.* ¶ 11; Cigna Compl. ¶ 14. Its two members are citizens of New Jersey and New York. ECAPS Compl. ¶ 11; *see also* Dkt. 50-3 at 1 n.1.

Marcella Livolsi is an employee-participant of a Cigna health insurance plan who underwent breast reconstruction surgery with ECAPS. ECAPS Compl. ¶¶ 7–8, 12. She was, as alleged by ECAPS, denied reimbursement from Cigna for her surgery. *Id.*; *see also id.* ¶ 206 ("Despite Cigna's violation of Ms. Livolsi's right to coverage of her breast reconstruction surgery and refusal to pay ECAPS, ECAPS provided the medically necessary breast reconstruction surgery treatment that Livolsi sought from ECAPS.").

**B.    Managed Care and Employer-Sponsored Health Insurance Plans**

Cigna, as claims administrator and fiduciary for members who subscribe to its plans, manages the cost of health-care services for its members by entering into agreements with health care providers and health insurance intermediaries. Cigna Compl. ¶ 23; ECAPS Compl. ¶¶ 40–41. A health care provider who has entered into a provider agreement with Cigna is considered "in-network"; as a result, it gains access to patients with Cigna plans in exchange for accepting fixed rates. Cigna Compl. ¶¶ 23–25; ECAPS Compl. ¶¶ 39–41. Cigna plan members who utilize services from in-network providers face "minimal financial risk or out-of-pocket expense." Cigna Compl. ¶ 24. A health care provider who is "out-of-network," by contrast, has not entered into a provider agreement with Cigna, and as a result, charges higher insurance deductibles and

4

co-insurance. Cigna Compl. ¶¶ 24–25. Because there is no agreement between Cigna and the out-of-network provider, those providers charge and bill Cigna and the plan members at rates set independently by the out-of-network provider. *Id.* ¶ 25; ECAPS Compl. ¶¶ 40–41.

The majority of Cigna plans permit its members to receive care from out-of-network providers, Cigna Compl. ¶ 26, but require that any patient submitting a claim for reimbursement for such services do so in compliance with the terms of the relevant Cigna plan and related coverage policy, *id.* ¶ 32. Cigna also requires that the out-of-network provider "bill and obligate the Plan members to pay the balance due between what the providers charge Cigna and the amount Cigna reimburses, a practice known as 'balance billing.'" *Id.* ¶ 28; ECAPS Compl. ¶ 105. These "cost-sharing mechanisms" are "not only critical to Cigna-administered or insured plans," but "underlie the managed health-care system" more generally, insofar as in-network pricing incentivizes patients to seek lower-cost in-network providers, which "keep[s] the overall cost of health care down." Cigna Compl. ¶¶ 30–31.

### C.    "Fee Forgiving" and "Unbundling"

The practice of "fee forgiving" occurs when an out-of-network provider waives, reduces, or fails to attempt to collect the required deductible, co-insurance, or balance amount from the patient. Cigna Compl. ¶ 33; ECAPS Compl. ¶ 107. The practice "drives up medical costs" because it diminishes the incentive to seek in-network providers. Cigna Compl. ¶ 34. As a result, it is illegal in several jurisdictions, *see id.* ¶ 35, and has been criminalized in at least two states, *see* Colo. Rev. Stat. Ann. § 18-13-119; Fla. Stat. § 817.234(7). The Cigna plans, as a result, include "Fee Forgiveness Exclusion" provisions that exclude coverage where a health care provider engages in fee forgiving by waiving, reducing, or failing to collect the required balance amount. *Id.* ¶ 37; ECAPS Compl. ¶ 107. If a provider is found to have engaged in fee forgiving,

"there is no coverage under the applicable Cigna Plan for the provider's services, and therefore the provider is not entitled to reimbursement by the Cigna Plan." Cigna Compl. ¶ 38.

The practice of "unbundling" occurs where a health care provider "bills a payor using multiple billing codes for a group of procedures that are covered in a single global billing code." *Id.* ¶ 45. By billing a payor for multiple codes, rather than "one single global code," a provider may "increase its revenue, to the detriment of the payor." *Id.* The practice has been determined by the Centers for Medicare and Medicaid Services ("CMS") to be "a form of health care fraud and abuse." *Id.*

### D. Alleged Breaches of the Multiplan Agreement

#### 1. Terms of the Agreement

On May 15, 2012, ECAPS entered into a written agreement with Multiplan to become an out-of-network provider with Cigna, one of Multiplan's clients. ECAPS Compl. ¶¶ 28, 42; *see also* 25 Civ. 255 at Dkt. 1, Ex. 1 (the "MPI Agreement"). The contract states that "MPI agrees that it has entered into agreements with Clients [here, Cigna] that specify that the right to access the Network, including access to the Contract Rates, shall be subject to the terms of this Agreement." MPI Agreement § 4.3. As an out-of-network provider, ECAPS never entered into a direct agreement with Cigna; it thus "lacks a direct contractual relationship with those patients' Plans and the Plan administrators like Cigna Payor." ECAPS Compl. ¶ 41; Cigna Compl. ¶ 43. The MPI Agreement instead addresses the interplay between ECAPS and Cigna. It states, in crucial part, that ECAPS will "provide medical services to participants and beneficiaries covered by Cigna-administered Plans" in exchange for which Cigna is "contractually required to pay ECAPS a contractually-defined 'Contract Rate,' defined as 85% of ECAPS's billed charges."

ECAPS Compl. ¶ 42; MPI Agreement § 2.1.[2] The "covered services" as defined by the contract include "medically necessary health care treatment . . . rendered by a Network Provider and provided to a Participant for which a User is responsible for payment pursuant to the terms of a Program [i.e., a group health plan]." ECAPS Compl. ¶ 44; MPI Agreement, Ex. A., § 1.8. The breast reconstruction surgeries provided by ECAPS were, as alleged, a covered service. ECAPS Compl. ¶¶ 46–49.

The Agreement further states that

> Group [ECAPS] will bill or collect from a [Cigna Plan] Participant all Co-payments, if any, as specified in the Participant's Benefit Program for Covered Services. Following the receipt of an explanation of benefits form [sic] from Client [Cigna], [ECAPS] will bill or collect from a Participant: (i) the Deductible or Co-insurance, if any, as specified in the Participant's Benefit Program; (ii) payment for health care services or supplies at the Contract Rate once the Participant has reached the Benefit Program Maximum, if applicable, and/or (iii) payment for services, other than Covered Services, for which the Participant's Benefit Program does not provide coverage.

MPI Agreement § 5.4(a).

ECAPS was to submit its claims for payment directly to Cigna within 180 days of rendering health care services. ECAPS Compl. ¶¶ 55–57 (citing MPI Agreement § 5.1–3); *see also* MPI Agreement, Ex. C ¶ 12.

The MPI Agreement permits modifications to the contract "[u]nless otherwise required by th[e] Agreement," including "upon written agreement executed by both parties" or, in the alternative, "upon at least thirty (30) days prior written notice from MPI to [ECAPS]. . . . If [ECAPS] rejects the proposed amendment, th[e] Agreement will terminate on the Amendment Effective Date." *Id.* § 9.2(a).

---

[2] Any agreement between Cigna and Multiplan was not annexed to the parties' pleadings.

On January 15, 2018, Multiplan sent a letter to ECAPS that purported to amend the MPI

Agreement. ECAPS Compl. ¶ 125. The proposed amendment sought to "update" and "clarify"

the following:

> [The] agreement with Multiplan is governed by each client's benefit plan and
> reimbursement policies. . . . Multiplan clients (and their customers) are not required
> to access every network offered by Multiplan, or to access every provider
> participating in the network(s) they do access. Therefore, Multiplan clients (and
> their customers) may elect to not access your agreement and in those situations the
> terms of your agreement will not apply.

Dkt. 1, Ex. 1 at 17 (the "Proposed Amendment"). The Proposed Amendment also reduced the

contract rate due ECAPS from 85% of its billed charges to 75%. *See id.* at 18; *see also* ECAPS

Compl. ¶ 122. The record does not reflect that ECAPS rejected the proposed amendment within

the 30-day period.

### 2.    Alleged Breaches of the Agreement

ECAPS alleges that, "[s]ince May 2012 and continuing to date," it "performed its

material obligations under the MPI Contract" by providing breast reconstruction services to

patients that are members of the Cigna plans. *Id.* ¶¶ 83, 85. It further claims that it has "billed or

collected cost-sharing sums from its patients who are Participants in Cigna Payor Plans for the

amount of co-payments, deductibles, and co-insurance (if any) that these patients may owe,

where the Cigna Payor has properly identified and communicated to ECAPS such cost-sharing

amounts," *id.* ¶ 87, and that it has timely submitted claims for payment to Cigna, *id.* ¶ 86.

ECAPS alleges that Cigna "almost always failed to comply with [its] obligations under the MPI

Contract and applicable regulations" and has "paid ECAPS less—typically far less—than the

85% Contract Rate due ECAPS under the MPI Contract." *Id.* ¶¶ 88, 94.

Cigna, however, alleges that, between 2021 and 2023, its anti-fraud unit received

information from "multiple independent sources" which indicated that ECAPS "was, and had

been, engaging in improper billing practices." Cigna Compl. ¶ 46. Cigna conducted an "extensive investigation" into ECAPS's billing practices. *Id.* ¶ 47. It included "analyzing a statistically representative sample of medical records associated with Cigna members who purportedly received services from ECAPS," "sending verification of service letters to Cigna members to ask them questions about the services they purportedly received from ECAPS," "interviewing Cigna members regarding their experience with and charges by ECAPS," and "comparing the charges that ECAPS billed to Cigna with those charged by other out-of-network providers for the same services." *Id.* ¶ 47.

The investigation, Cigna claims, "confirmed" that ECAPS had engaged in "fraudulent" billing practices that "caused at least $8,564,795.58 in losses to Cigna and the Cigna Plans between January 1, 2025 to the present." *Id.* ¶ 48. Specifically, Cigna alleges ECAPS was unlawfully billing for (1) claims for which it was waiving, forgiving, or reducing patient cost-share obligations (fee forgiving), (2) claims for services that ECAPS had not sufficiently documented, (3) "unbundled" services, (4) duplicate claims for the same service allegedly rendered, and (5) claims for services that were medically unnecessary. *Id.* ¶ 9. Cigna cites an analysis conducted by its anti-fraud unit that purportedly showed that "ECAPS billed between $28,000 to $134,714 more per identical procedure compared with those other providers in the same geographic region. In other words, because of ECAPS's "'dual-pricing' scheme—which was facilitated by the practice of fee forgiving—ECAPS was able to submit billed charges to Cigna that were substantially higher than the average charge for the same procedures billed by other similarly situated providers." *Id.* ¶ 62. Cigna represents that, had it known ECAPS was billing for such items, it "would not have paid ECAPS for those claims." *Id.* ¶ 9.

Cigna also maintains that, in the wake of its investigation into ECAPS's billing practices, it "requested on multiple occasions in 2022 and 2023 that ECAPS provide evidence of its efforts to bill and collect patient cost-share obligations, including copies of patient billing and collection ledgers," and that ECAPS "refuse[d] to produce the requested documents."  Cigna Compl. ¶¶ 52, 55.

ECAPS, for its part, alleges that the MPI Agreement makes clear that, insofar as ECAPS is an out-of-network provider and "not a party to any Plan-Contract between an employer and its employees," that ECAPS "had to seek cost-share information from Cigna Payor, the only authoritative source of information on calculating a Participant's cost-share obligations." ECAPS Compl. ¶ 60.  In particular, ECAPS alleges that the MPI Agreement's provision that ECAPS was not required to "bill or collect from" a Cigna plan member until ECAPS received an "explanation of benefits [EOB] from the Client," meant that, in practice, the accuracy of ECAPS's billing practices was contingent upon "accurate co-payment and other patient cost-sharing information from Cigna Payor." *Id.* ¶ 61 (citing MPI Agreement ¶ 5.4(a)).  But, ECAPS alleges, Cigna "simply refused to provide ECAPS with accurate cost-sharing information" such that EOBs generated by Cigna "were often inaccurate or knowingly false." *Id.* ¶¶ 61, 89. Cigna's errors, ECAPS alleges, included: (1) "assertions that a purported 'discount' had been applied by Cigna Payor that resulted in no cost-sharing sum being owed by a patient," (2) the "use of a legally impermissible 'out-of-network' cost-sharing standard to a patient in situations where the law require[d] the Cigna Payor EOB to apply a lower 'in-network' cost-sharing standard to a patient," and that (3) "Cigna Payor EOBs were never subsequently updated, as legally required, with the Cigna Payor's issuance of a final EOB to ECAPS, once all claim-processing appeals were complete, identifying the information ECAPS needed to accurately bill

or collect the cost-sharing amount from a patient." *Id.* ¶ 88. ECAPS alleges, for example, that between January 2019 and September 2024, Cigna's "gross underpayments" resulted from Cigna "intentionally applying false, improper, and legally unauthorized 'discounts' to ECAPS's claims for treatment provided to Cigna Participants." *Id.* ¶ 96.

ECAPS further alleges that the MPI Agreement was "not structured to impose any condition on Cigna Payor's required 85% Contract Rate payment to ECAPS in return for ECAPS's provision of Covered Services to a patient covered by a Cigna-administered plan." *Id.* ¶ 62. Notwithstanding this, ECAPS alleges that, in April 14, 2023, Cigna sent a letter to ECAPS stating that "the Cigna Payor would no longer pay anything ($0) to ECAPS in return for its delivery of specialized breast cancer reconstruction services to members of Cigna Payor Plans." *Id.* ¶ 102. ECAPS, in response, initiated administrative proceedings pursuant to an independent dispute resolution ("IDR") process provided under NSA. *Id.* ¶¶ 182–84. "If a party invokes the formal IDR process, the parties then participate in a baseball-style arbitration in which both parties submit their proposed payment amount to the IDR entity (*i.e.*, the arbitrator) and the IDR entity chooses one of the amounts as the amount the Plan must pay the out-of-network provider." *Id.* ¶ 183 (quoting 29 U.S.C. § 1185e(c)(2), (5)–(6)). The Plan must make any such payment within 30 days. *See id.* ECAPS alleges that the parties engaged in the IDR process, which resulted in a determination of an "award[] against the Cigna Payor exceeding $3 million." *Id.* ¶ 184.

### E.    Procedural History

*The Cigna Action* (**25 Civ. 1686**): On October 9, 2024, Cigna filed the Complaint in federal district court for the District of Connecticut. Dkt. 1. That day, the court set a deadline of December 8, 2024 for the filing of amended pleadings, discovery, and dispositive motions.

Dkt. 6.  On December 30, 2024, ECAPS filed an initial motion to dismiss.  Dkt. 16.  On

February 4, 2025, the parties filed a joint motion to transfer the case to this District, which was

granted on February 13, 2025.  Dkt. 30.  On February 27, 2025, the case was assigned to Judge

Cote, Dkt. 31, and on March 12, 2025, it was reassigned to this Court, Dkt. 35.  That day, the

Court scheduled an initial conference with the parties for May 8, 2025.  Dkt. 36.  On April 25,

2025, ECAPS filed a new motion to dismiss.  Dkt. 50 ("ECAPS Br.").  On April 28, 2025, in

light of the pending motion, the Court adjourned the initial conference and set a briefing

schedule.  Dkt. 51.  On May 30, 2025, Cigna opposed.  Dkt. 55 ("Cigna Opp.").  On June 20,

2025, ECAPS replied.  Dkt. 56 ("ECAPS Reply").

      *The ECAPS Action* **(25 Civ. 255)**:  On January 10, 2025, ECAPS and Livolsi filed, in

this Court, the Complaint against Cigna and Multiplan.  Dkt. 1.  On March 12, 2025, the case

was designated as related to the Cigna Action, and an initial conference was scheduled in both

for May 8, 2025.  Dkt. 8.  On April 25, 2025, Multiplan and Cigna separately filed motions to

dismiss.  Dkt. 23 ("Multiplan Br."); Dkt. 26 ("Cigna Br.").  On April 28, 2025, in light of those

motions, the Court adjourned the initial conference and set a briefing schedule.  Dkt. 30.  On

May 30, 2025, ECAPS filed an opposition to both motions.  Dkt. 42 ("ECAPS Opp.").  On

June 20, 2025, Cigna and Multiplan each replied.  Dkts. 45–46.

## II.    Applicable Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(1)

      Dismissal under Rule 12(b)(1) is appropriate where the district court lacks the statutory

or constitutional power to adjudicate the case.  *See Makarova v. United States*, 201 F.3d 110, 113

(2d Cir. 2000).  A plaintiff asserting subject-matter jurisdiction "has the burden of proving by a

preponderance of the evidence that jurisdiction exists."  *Giammatteo v. Newton*, 452 F. App'x

24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113). In resolving a motion to dismiss for lack of subject-matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citation omitted), although "jurisdiction must be shown affirmatively," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

Article III of the Constitution limits the federal judicial power to the resolution of "cases" and "controversies." U.S. Const. art. III., § 2 (capitalization altered). An "essential and unchanging part" of this case-or-controversy limitation is the requirement that a plaintiff have standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Thus, Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Standing is not dispensed in gross." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up). Thus, a plaintiff must "demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)). "[T]he 'irreducible constitutional minimum' of standing" requires that the plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560–61).

**B.    Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").

On a Rule 12(b)(6) motion, a court "may review only a narrow universe of materials." *Goel v. Bunge, Ltd.,* 820 F.3d 554, 559 (2d Cir. 2016). This includes "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM,* 19 F.4th 85, 106 (2d Cir. 2021) (citation omitted). Here, the Court may consider the MPI Agreement. *See Goel,* 820 F.3d at 559 ("A document is integral to the complaint where the complaint relies heavily upon its terms and effect"; such often involves "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" (citation omitted)).

### III.    ECAPS's Motions to Dismiss Cigna's Complaint

#### A.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction

ECAPS moves to dismiss Cigna's complaint on the ground that Cigna lacks standing to bring the ERISA claim upon which its assertion of federal-question jurisdiction depends. *See* ECAPS Br. at 11–14. It centrally argues that Cigna, proceeding as a fiduciary and claims

14

administrator on behalf of its members, lacks standing to sue on behalf of itself or its members. *See id.*

ECAPS, however, overlooks that ERISA expressly grants fiduciaries like Cigna standing to bring civil actions for equitable relief. *See* 29 U.S.C. § 1132(a)(3). The Supreme Court has recognized this point. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 631 (2006) ("A fiduciary may bring a civil action under § 502(a)(3) of ERISA '(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."); *see also Warth v. Seldin*, 422 U.S. 490, 514 (1975) ("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute."). And here, Cigna alleges that ECAPS's alleged billing practices harmed not only the members it is authorized to represent, but also personally affected Cigna, in that Cigna "expended its own time and resources in investigating the surgical center['s] billing practices" and "incurred significant expenses and lost productivity as a result of having to investigate ECAPS's false representations and fraudulent billing practices." Cigna Opp. at 6–7 (citing Cigna Compl. ¶ 82). Cigna's Complaint thus pleads a concrete injury to Cigna itself. *See Conn. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 128 F. Supp. 3d 501, 509 (D. Conn. 2015) (so too holding); *Gerosa v. Savasta & Co.*, 329 F.3d 317, 320 (2d Cir. 2003) ("ERISA places great responsibilities upon the fiduciaries of a plan to protect the interests of the plans' beneficiaries.").

*Thole v. United States Bank N.A.*, 590 U.S. 538 (2020), on which ECAPS relies in disputing Cigna's standing, is inapposite. There, the Supreme Court, noting that two health

insurance plan participants had not claimed to have "sustained any monetary injury," held that they could not sue for equitable relief under ERISA. *Id.* at 540–41; *see also id.* at 547 ("The plaintiffs have no concrete stake in this dispute and therefore lack Article III standing."). By contrast, this case involves claims not by individual plan members, but by the fiduciary authorized to represent them. And, unlike the *Thole* plaintiffs, Cigna here has pled a classic pocketbook injury to itself, of more than $8 million as a result of ECPAs allegedly fraudulent billing practices (independent of the expenses Cigna spent investigating these practices). This loss, unlike that in *Thole*, is "concrete, particularized, and actual." *Id.* at 540.

Cigna, on its own behalf and as claims administrator and fiduciary on behalf of its members, thus has Article III and statutory standing to pursue its ERISA claim for equitable relief. *See, e.g.*, *True View Surgery*, 128 F. Supp. at 509 (Cigna has Article III and statutory standing to recover amounts paid to healthcare services provider on behalf of itself and its plan members); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950, 959–61 (C.D. Cal. 2015) (same); *Connecticut Gen. Life Ins. Co. v. Sw. Surgery Ctr., LLC*, No. 14 Civ. 08777, 2015 WL 6560536, at *3–4 (N.D. Ill. Oct. 29, 2015) (same). And because Cigna properly brings this federal claim, this Court has subject matter jurisdiction over the Cigna Action.[3]

Because a plaintiff "must demonstrate standing for each claim [it] seeks to press," *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012), the Court now considers whether, on the facts pled, Cigna has standing to bring its state-law claims. ECAPS disputes this, contending

---

[3] In light of this determination, the Court has no occasion to determine whether subject-matter jurisdiction could alternatively be based on diversity jurisdiction. *See Smulley v. Safeco Ins. Co. of Illinois*, No. 21 Civ. 2124, 2022 WL 16753118, at *1 (2d Cir. Nov. 8, 2022) (citing 28 U.S.C. §§ 1331, 1332),

that these claims "do not belong to Cigna, but to non-party employer plans." ECAPS Br. at 21. That is wrong. As Cigna notes, courts have uniformly held that "[a]dministrators of self-funded plans have Article III standing to pursue both ERISA and non-ERISA causes of action against providers who possess self-funded plan assets to which the provider is not entitled." Cigna Opp. at 4–5 (collecting cases). That is because claims administrators such as Cigna retain a "concrete and particularized interest" in "paying only valid claims to ensure its members' financial interests are protected." *True View Surgery*, 128 F. Supp. 3d at 509 (citing *Gerosa*, 329 F.3d at 320).

Moreover, Cigna brings its state-law claims not only in a representative capacity. Its state-law claims for fraud, negligent misrepresentation, unjust enrichment, conversion, and under Connecticut statutory law each allege injuries to Cigna itself. Cigna Compl. ¶ 77 (fraud) ("ECAPS has made numerous false and misleading statements, directly and indirectly, *to Cigna*" (emphasis added)); *see also id.* ¶ 84 (same as to negligent misrepresentation); ¶ 90 (same as to unjust enrichment); ¶ 107 (same as to conversion); ¶¶ 114, 124 (same as to Connecticut statutes). These allegations plausibly plead a cognizable injury under Article III. *See Lujan*, 504 U.S. at 560 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

The Court thus finds that Cigna has standing to bring its ERISA and non-ERISA claims, and denies ECAPS's Rule 12(b)(1) motion.

## B.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

ECAPS moves to dismiss Cigna's federal- and state-law claims.

### 1.    ERISA Claim

ERISA permits a "fiduciary" to bring civil actions for equitable relief to redress violations of the terms of an ERISA plan. 29 U.S.C. § 1132(a)(3); *see also Gerosa*, 329 F.3d at 320. ECAPS moves to dismiss Cigna's ERISA claim on the grounds that (1) Cigna is not a fiduciary; (2) ECAPS has not been plausibly alleged to have violated "any provision of [ERISA] or the terms of the [Cigna] plan"; (3) Cigna seeks equitable, as opposed to legal, relief. ECAPS Br. at 15–19. These arguments are unpersuasive.

*First*, Cigna properly brings suit as a fiduciary on behalf of its plan members. ERISA states, in relevant part,

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting the management of such plan or exercises any authority or control respecting the management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties." (cleaned up)).

Cigna plausibly pleads that it "is a fiduciary of each of the Cigna Plans at issue in this case in its capacity as a claims administrator, as it exercises discretionary authority over plan assets and plan administration. . . . The Cigna Plans at issue here *expressly authorize* Cigna to recover on their behalf." Cigna Compl. ¶¶ 97–98 (emphasis added). Cigna further pleads that, as part of its investigation into ECAPS's billing practices, it "analyz[ed] a statistically representative sample of medical records associated with Cigna members who purportedly

received services from ECAPS," "sen[t] verification of service letters to Cigna members to ask them questions about the services they purportedly received from ECAPS," and "interview[ed] Cigna members regarding their experience with and charges by ECAPS." *Id.* ¶ 47. Cigna further pleads that ECAPS told one of Cigna's members that it "would not be balance billed," and told another, whom it did not bill, "that 'if [the member] chose [ECAPS] then there would be no out of pocket costs for [the member].'" *Id.* ¶ 50. Cigna's investigation on behalf of its individual plan members is an act consistent with its holding fiduciary duties towards them. *See, e.g., Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 620 (2d Cir. 2006) (Sotomayor, J.) ("The general obligations of an ERISA fiduciary are set forth in § 404, which requires that a fiduciary investigate proposed transactions with . . . care, skill, prudence, and diligence[.]" (quoting 29 U.S.C. § 1104(a)(1)(B))); *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 86 (2d Cir. 2001) (duties of ERISA fiduciary include investigating transactions with "an eye . . . to the interests of the participants and beneficiaries.").

ECAPS counters by citing a single 2014 case in which Cigna was held to have conclusorily alleged that it was a fiduciary. *See Connecticut Gen. Life Ins. Co. v. La Peer Surgery Ctr. LLC*, No. 13 Civ. 3726, 2014 WL 961806, at *4–5 (C.D. Cal. Mar. 12, 2014). To state the obvious, that fact-specific case does not control here. Here, Cigna has amply pled that it exercises discretionary authority over the management of the relevant plans. *See* 29 U.S.C. § 1002(21)(A); *see also, e.g., Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir. 2002) (allegation that "Connecticut General exercised exclusive discretion with respect to the management and investment of the Plan's assets" sufficed to allege ERISA fiduciary status (brackets omitted)); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 472 (S.D.N.Y. 2005) (plan administrators alleged to be ERISA fiduciaries where plan terms expressly granted them

19

"authority and control" over the plans); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 2 Civ. 8853, 2005 WL 563166, at *4 (S.D.N.Y. Mar. 10, 2005) ("So long as the Complaint's allegations regarding the defendants could arguably justify conferring fiduciary status, then the allegations are sufficient.").

*Second*, Cigna has plausibly alleged violations of the terms of its plans. *See* 29 U.S.C § 1132(a)(3) (permitting plan fiduciaries to sue for violation of "any provision of . . . the terms of the plan."). Its Complaint, summarizing pertinent plan terms, states that, "because Cigna has no contract with out-of-network providers, it will only pay those providers if they represent that they have an assignment of benefits." Cigna Compl. ¶ 43. And, once an assignment of benefits is assumed, the providers "must comply with all terms and conditions of the applicable Cigna Plan, and the provider is only entitled to whatever benefits may be available under the applicable Cigna Plan." *Id.* Cigna alleges that ECAPS "submitted claims to Cigna representing that it was an assignee of the patient," and in so doing, "represented that it was submitting claims that complied with the terms of the relevant Cigna Plans and the related coverage policies, including Cigna's documentation requirements." *Id.* ¶ 44. Those requirements, as alleged, prohibit the practices of "fee forgiving" and "unbundling"—practices in which ECAPS is plausibly alleged to have engaged. *Id.* ¶ 37 ("Cigna Plans include language that excludes coverage when a provider waives, reduces, and/or fails to attempt to collect the required deductible, coinsurance, and/or Balance Amount from the member."); *see also id.* ¶ 77 ("ECAPS has made numerous false and misleading misrepresentations, directly and indirectly, to Cigna, including, but not limited to the following: misrepresenting that ECAPS was not engaging in fee forgiving when it was; submitting fraudulent and excessively high charges to Cigna that did not reflect the amount that ECAPS actually charged; misrepresenting that services were provided to Cigna members when,

in fact, the records and documents do not support that services were rendered as billed; billing Cigna for unbundled services; billing for duplicate claims." (cleaned up)); *see also id.* ¶¶ 94–105. These allegations satisfactorily plead a violation of the terms of the Cigna plans, and thus state a claim under ERISA. *See, e.g., Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 133 (2d Cir. 2021) (credible showing that an out-of-network provider engaged in fee forgiving and unbundling "sufficient" to state an ERISA claim); *cf. True View Surgery*, 128 F. Supp. 3d at 511–12 (same).

Finally, ECAPS argues that Cigna improperly seeks legal, as opposed to equitable, relief. *See* ECAPS Br. at 17–18. Section 502(a)(3) does not permit claims for legal relief. *See Sereboff*, 547 U.S. at 361–62; *Great–W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209–10 (2002) ("Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." (emphasis omitted)). Whether relief "is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Id.* at 213 (cleaned up). A plaintiff pursuing an equitable claim under § 502(a)(3) must plead that the fiduciary (1) "identify a particular fund" at issue; (2) allege that the defendant is under an "obligation to segregate," or that "the funds are segregated in a separate account"; and (3) allege that "the specifically identified funds remain in the defendant's possession." *Est. of Close v. Cigna Health & Life Ins. Corp.*, No. 22 Civ. 7449, 2023 WL 8846562, at *3 (S.D.N.Y. Dec. 21, 2023) (citing *Sereboff*, 547 U.S. at 363).

Each element is properly pled here. Cigna pleads that the overpayments it remitted comprised a fund of at least $8 million and were "deposited into specified bank accounts that were under ECAPS's control," and that "some or all of these overpayments remain in these accounts." Cigna Compl. ¶¶ 101–02. It further alleges that, "[t]o the extent that some portion of

the overpayments has been removed from these accounts," those payments "have been transferred to, and remain in, other bank accounts within ECAPS's possession, custody, and control, or they have been exchanged for other property that remains in ECAPS's possession, custody, or control." *Id.* ¶ 102. Cigna, finally, alleges that "ECAPS is not entitled to the plan assets it has received," and therefore seeks "retroactive termination of coverage" in the form of an "injunction enforcing the plan terms." *Id.* at ¶¶ 104–05. In light of these allegations, the relief Cigna seeks under ERISA is equitable in nature. *See, e.g., True View Surgery*, 128 F. Supp. 3d at 511–12 (similarly so holding); *Iron Workers Locs. 40, 361 & 417 Health Fund v. Dinnigan*, 911 F. Supp. 2d 243, 258 (S.D.N.Y. 2012) (same); *cf. Banyai v. Mazur*, No. 00 Civ. 9806, 2007 WL 959066, at *4 (S.D.N.Y. Mar. 29, 2007) (similar).

Because Cigna's Complaint states a claim for equitable relief under § 502(a)(3) of ERISA, the Court denies ECAPS's Rule 12(b)(6) motion as to that claim.[4]

### 2. State-Law Claims[5]

Because Cigna's ERISA claim is well-pled, the Court exercises its supplemental jurisdiction to consider the pendent state-law claims. *See, e.g., Montefiore*, 642 F.3d at 332–33

---

[4] ECAPS, in the alternative, moves to dismiss on the ground that Federal Rule of Civil Procedure 17(a) requires that an action "be prosecuted in the name of the real party in interest." ECAPS Br. at 19–21. It argues that the Complaint be dismissed on the ground that Cigna "fail[ed] to join the self-funded plans as the real parties in interest." *Id.* at 19. But that argument is squarely foreclosed by the plain text of that rule, which adds that "administrators" and "part[ies] authorized by statute" may "sue in their own names without joining the person for whose benefit the action is sought." Fed. R. Civ. P. 17(a)(1).

[5] ECAPS does not argue that ERISA preempts Cigna's state-law claims. *See generally* Cigna Br. (Cigna moves to dismiss ECAPS's state common-law claims pursuant to ERISA preemption). ERISA clearly does not preempt the fraud, negligent misrepresentation, and unjust enrichment theories, as those arise from "independent legal dut[ies]" distinct from those imposed under the relevant plans. *See Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 328 (2d Cir. 2011); *see also, e.g., DaPonte v. Manfredi Motors, Inc.*, 157 F. App'x 328, 331 (2d Cir. 2005) (no ERISA preemption of fraud claim because "neither the existence of an ERISA plan nor the

(state-law claims that "arise from the same common nucleus of operative fact" as ERISA claims "are properly subject to the District Court's supplemental jurisdiction" (citing *Brunswick Surgical Ctr., LLC v. CIGNA Healthcare*, Civ. No. 9 Civ. 5857, 2010 WL 3283541, at *1 (D.N.J. Aug. 18, 2010) (where health care providers' claims for reimbursement for medical services involved 13 different health insurance policies, eight of which were governed by ERISA, claims involving the five non-ERISA policies were subject to the court's supplemental jurisdiction)). ECAPS here moves to dismiss Cigna's state-law claims for fraud, negligent misrepresentation, unjust enrichment, conversion, and claims under two Connecticut statutes, the Connecticut General Theft statute and CUTPA. The Court reviews each in turn.

      *i.*        *Fraud and negligent misrepresentation*

ECAPS moves to dismiss Cigna's fraud claims on the ground that the Complaint fails to meet the heightened pleading standard for fraud and negligent misrepresentation claims imposed by Federal Rule of Civil Procedure 9(b). *See* ECAPS Br. at 23–24 (quoting *Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 254–55 (S.D.N.Y. 2011) ("Where, as here, the negligent misrepresentation claim is based on the same set of facts as those upon which a fraud claim is grounded, Rule 9(b) applies to the negligent misrepresentation as well.").

To satisfy Rule 9(b), a complaint must "state with particularity the circumstances constituting fraud or mistake" by "(1) specifying the statements that the plaintiff contends were

---

interpretation of any such plan's terms is material" to the state-law fraud and negligent misrepresentation claims); *Stevenson v. Bank of New York Co.*, 609 F.3d 56, 60 (2d Cir. 2010) (same as to negligent misrepresentation and unjust enrichment insofar as "[t]hese claims make reference to ERISA plans solely as a means of describing the consideration underlying an alleged contract that itself is separate from the terms of any plan; they will not affect the referenced plans, particularly not in a way that threatens ERISA's goal of uniformity"); *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 149 (2d Cir. 2017) (similar); *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 242 (2d Cir. 2014) (similar).

fraudulent, (2) identifying the speaker, (3) stating where and when the statements were made, and (4) explaining why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (cleaned up).

Cigna's Complaint satisfies each requirement. It alleges that, between 2021 and 2023, ECAPS made several false and misleading misrepresentations to Cigna plan members, including but not limited to the following: (1) "misrepresenting that ECAPS was not engaging in fee forgiving when it was"; (2) "submitting fraudulent and excessively high 'charges' to Cigna that did not reflect the amount that ECAPS actually charged"; (3) "misrepresenting that services were provided to Cigna members when, in fact, the records and documents do not support that services were rendered as billed"; (4) "billing Cigna for unbundled services"; and (5) "billing for duplicate claims." Cigna Compl. ¶ 77. The Complaint also identifies representative samples of interviews with its members that reflect this. And it describes results from a "coding review," including five examples of claim lines that were unbundled and five that were billed for services not rendered. *Id.* ¶¶ 70–71. These allegations "provide ample details as to the nature of the alleged scheme" to pass muster under Rule 9(b). *United States of Am. Ex rel. Chorches v. Am. Med. Responses, Inc.*, 865 F.3d 71, 87 (2d Cir. 2017) (rejecting Rule 9(b) challenge in the face of a similar showing). To meet Rule 9(b), Cigna was not required, as ECAPS argues, to beyond this to "cite specific invoices." *See id.* (plaintiffs not required to plead specific "invoice numbers and the dates of their submissions" to satisfy Rule 9(b)).[6]

The Cigna Complaint also explains in detail the basis for its claim that these statements were fraudulent. Under New York law, a plaintiff must plead "(1) a material misrepresentation

---

[6] Cigna represents in its opposition memo that it is willing and able, if requested to do so in discovery, to provide "a list of claims that are at issue." Cigna Opp. at 16 n.4.

or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Tutor Perini Bldg. Corp. v. New York City Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 515 (S.D.N.Y. 2021) (citing *Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)). Negligent misrepresentation "involves most of the same elements as fraud, with a negligence standard substituted for the *scienter* requirement." *Trahan v. Lazar*, 457 F. Supp. 3d 323, 354 (S.D.N.Y. 2020) (concluding the "negligent misrepresentation claim rises and falls with the fraud claim").[7]

Cigna's Complaint devotes several pages to explaining the practices of "fee forgiving" and "unbundling," and explaining why each practice is fraudulent. Cigna Compl. ¶¶ 33–45. Such practices, in essence, permit health care providers to duplicate charges for services rendered and thus "exponentially increas[e] health-care costs for employers and employees." *Id.* ¶ 36. The Cigna Complaint then alleges that ECAPS knowingly or negligently engaged in these practices, *see id.* ¶ 80; that it intended to, and in fact did, induce reliance from Cigna based on its misrepresentations, *see id.* ¶¶ 80–81; and that such reliance was to Cigna's detriment, *see id.* ¶ 81. Taken together, these allegations plead with the requisite particularity fraud and negligent

---

[7] ECAPS suggests New York law, and not Connecticut law, may govern these claims. *See* ECAPS Br. at 27 n.7. Cigna did not brief the issue.

The Court assumes without deciding that New York law applies. If Cigna states a claim for fraud under New York law, whose pleading standards for fraud are more demanding, it necessarily does so under Connecticut law. *See Dhir v. Carlyle Grp. Emp. Co.*, No. 16 Civ. 6378, 2017 WL 4402566, at *4 (S.D.N.Y. Sept. 29, 2017) ("The Court notes that while both New York and Connecticut require a showing that the plaintiff relied on defendant's misrepresentation, only N[e]w York law requires that reliance also be reasonable."). As to unjust enrichment, however, New York and Connecticut law are coterminous. *See Czech Beer Importers, Inc. v. C. Haven Imparts, LLC*, No. 4 Civ. 2270, 2005 WL 1490097, at *6 (S.D.N.Y. June 23, 2005) (finding the laws of New York and Connecticut are in agreement regarding unjust enrichment); *Dhir*, 2017 WL 4402566, at *4 (same).

misrepresentation. *See, e.g., Connecticut Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. 14-2376, 2015 WL 4394408, at *21 (D. Md. July 15, 2015) ("[T]he Cigna entities have plausibly alleged that the [service providers] may be liable for fraud or negligent misrepresentation for, either intentionally or negligently, providing misleading information about their billing practices in their claim forms."); *True View Surgery*, 128 F. Supp. 3d at 514 (similar); *Sw. Surgery Ctr.*, 2015 WL 6560536, at *7–8 (similar).[8]

        *ii.*    *Unjust enrichment*

ECAPS moves to dismiss the unjust enrichment claim as duplicative of the fraud and negligent misrepresentation claims.  To prevail on a claim for unjust enrichment under either Connecticut or New York law, a plaintiff "bears the burden of showing that the defendant was enriched at the plaintiff's expense and that the benefit to the defendant was unjust." *Czech Beer Importers*, 2018 WL 6438349, at *6.

Here, the allegations on which the unjust enrichment claim is based are the same ones underlying the fraudulent and negligent misrepresentation claims. *See* Cigna Compl. ¶ 90 ("ECAPS submitted, and caused to be submitted, claims to Cigna for services provided to Cigna members that contained false and misleading representations, that included the misrepresentations described in this Complaint.").  Thus, although the unjust enrichment claim is well-pled, ECAPS has a colorable argument for dismissing it as duplicative. *See E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 455 (N.Y. Ct. App. 2018) (unjust enrichment is "not a catchall cause of action to be used when others fail"); *see also, e.g., Ohanian v. Apple Inc.*, No. 20 Civ. 5162, 2022 WL 826415, at *4 (S.D.N.Y. Mar. 18, 2022) ("If the gravamen of the

---

[8] Cigna's negligent misrepresentation claim is pled only "[i]n the alternative" to the fraud claim. Cigna Compl. ¶ 84.

Complaint sounds in tort or contract giving rise to a traditional claim, then the unjust enrichment claim is improper."); *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 791 (N.Y. Ct. App. 2012) ("To the extent that these [tort] claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.").

Cigna, however, rightly counters that at the pleadings stage, a party may state "as many separate claims or defenses as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(3), and that courts generally permit unjust enrichment theories to stand in the alternative through discovery, *see, e.g., Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 147 (S.D.N.Y. 2021). That is because there is a scenario under which the unjust enrichment claim may prove not to be duplicative; for example, if the more demanding showing required for fraud and negligent misrepresentation claims is not met but the showing for unjust enrichment is. *See, e.g., In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019) ("The plaintiff's claims for fraud and negligent misrepresentation theoretically could fail and it still could prevail on the unjust enrichment claim."); *Allianz Risk Transfer v. Paramount Pictures Corp.*, No. 8 Civ. 10420, 2010 WL 1253957, at *10 (S.D.N.Y. Mar. 31, 2010) ("[Defendant's] argument that the dismissal of plaintiffs' fraud claims requires dismissal of the unjust enrichment claim is not correct" because "the pleading standards for unjust enrichment are distinct").

For the time being, the Court thus permits the unjust enrichment claim to proceed in the alternative. *See In re Skat*, 356 F. Supp. 3d at 325–26; *Space, Inc. v. Simowitz*, No. 8 Civ. 2854, 2008 WL 2676359, at *5 (S.D.N.Y. July 8, 2008).

### iii.    *Remaining claims*

Cigna does not defend the remaining state-law claims in its Complaint. *See* ECAPS Reply at 8–9 (noting abandonment of conversion, Connecticut General Theft Act, and CUTPA

claims).  On that basis, the Court grants ECAPS's motion to dismiss those claims.  *See, e.g.,*
*Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017) ("Federal
courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that
claim and the plaintiff fails to address in their opposition papers defendants' arguments for
dismissing such a claim." (citation omitted)); *Tobin v. The Rector*, No. 17 Civ. 2622, 2017 WL
5466705, at *3 (S.D.N.Y. Nov. 14, 2017) ("Claims that are not defended may be deemed
abandoned, and therefore, this claim is dismissed."), *aff'd sub nom. Tobin v. Rector, Church-
Wardens, & Vestrymen of Trinity Church, in City of New York*, 735 F. App'x 32 (2d Cir. 2018).

The Court also dismisses Cigna's claim under the Declaratory Judgment Act, as such
"does not . . . provide an independent cause of action." *In re Joint E. & S. Dist. Asbestos Litig.*,
14 F.3d 726, 731 (2d Cir. 1993) ((citing *Skelly Oil Co. v. Phillips Petroleum* Co., 339 U.S. 667,
671–72 (1950)); *Kennedy v. UnitedHealth Grp. Inc.*, No. 25 Civ. 432, 2025 WL 1725147, at *1
n.1 (S.D.N.Y. June 20, 2025) (rejecting plaintiff's attempt to "style[] its request for declaratory
relief as a . . . cause of action").

### III.    Cigna and Multiplan's Motions to Dismiss ECAPS's Complaint

Cigna and Multiplan each move to dismiss ECAPS's claims against them under
Rule 12(b)(6).

### A.    ERISA Claim

Livolsi claims that Cigna, in denying coverage for her post-mastectomy breast
reconstruction surgery, breached its fiduciary duty to her under ERISA.  *See* 29 U.S.C.
§ 1104(a)(1)(A)(i) (a fiduciary "shall discharge his duties with respect to a plan solely in the
interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing
benefits to participants and their beneficiaries").  She claims Cigna breached by denying her

coverage in violation of (1) the Women's Health and Cancer Rights Act ("WHCRA"), a 1998

amendment to ERISA, and (2) Cigna's plan terms. *See* ECAPS Compl. ¶ 188 (citing 29 U.S.C.

§ 1132(a)(3)) *see also id.* ¶ 207.

> The WHCRA provides, in relevant part,

> A group health plan shall provide, in a case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for—

>> . . . all stages of reconstruction of the breast on which the mastectomy has been performed in a manner determined in consultation with the attending physician and the patient. Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage.

29 U.S.C. § 1185b (cleaned up). The WHCRA, in short, requires that a group health plan that

provides insurance coverage for mastectomies must also provide coverage for a subsequent

breast reconstruction surgery. *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 624–25

(2d Cir. 2008). Livolsi alleges that, consistent with the WHCRA, her Cigna plan terms provided

coverage for breast reconstruction services along with coverage for her medically necessary

mastectomy. ECAPS Compl. ¶ 203.

Because the WHCRA itself lacks a private right of action, *cf. Krauss*, 517 F.3d at 625,

Livolsi seeks to enforce her rights under the WHCRA and her plan under § 502(a)(3) of ERISA,

which authorizes beneficiaries such as Livolsi to bring a civil action "to enjoin any act or

practice which violates any provision of" ERISA "or the terms of any plan," or "to obtain other

appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this

subchapter or the terms of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 507 (1996) (quoting

29 U.S.C. § 1132(a)); *see also id.* 511–12 (describing section 502(a)(3) as a "catchall" provision

"offering appropriate equitable relief for injuries caused by violations that § 502 does not

elsewhere adequately remedy"). To state a claim under § 502(a)(3), however, "the type of relief a plaintiff requests must be equitable." *Krauss*, 517 F.3d at 630 (cleaned up). Claims for damages are not cognizable under section 502(a)(3). *See id.*; *see also Coan v. Kaufman*, 457 F.3d 250, 263–64 (2d Cir. 2006).

> Here, Livolsi alleges that, in pursuing her ERISA claim, she seeks relief

> including but not limited to restitution in an amount that pays the costs of her breast reconstruction treatment wrongfully denied her by the Cigna Payor and restores her to the financial position she would have been in absent the Cigna Payor's violations; and injunctive relief that (a) prohibits the Cigna Payor from further violating the WHCRA or relevant provisions of her Plan-Contract, and (b) requires the Cigna Payor to comply with the WHCRA and Livolsi's Plan-Contract in all matters relating to her breast cancer diagnosis and treatment.

ECAPS Compl. ¶ 209.

To the extent it seeks restitution, Livolsi's ERISA claim is foreclosed by Supreme Court precedent. In *Great-W. Life & Annuity Ins. Co. v. Knudson*, the Court addressed whether restitution in the form of "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation," was an available remedy under ERISA § 502(a)(3). *Id.* at 210–11. The Court held it was not. Noting "the difference between legal and equitable forms of restitution," *id.* at 218, the Court construed § 502(a)(3) to authorize only categories of relief typically available in equity, *see id.* at 211 (quoting Restatement (Second) of Contracts § 359 (1979); Corbin, Contracts § 1142, at 119 (1964)). Although certain forms of restitution—"the imposition of a constructive trust or equitable lien on particular property"—were traditionally considered equitable, the Court held that the kind of restitution at issue, "specific performance of a contract to pay money," was not available in equity, and thus "not authorized by § 502(a)(3)." *Id.* at 211–14; *see also id.* at 218 ("Respecting Congress's choice to limit the relief available under § 502(a)(3) to "equitable relief" requires us

to recognize the difference between legal and equitable forms of restitution."). That was so notwithstanding the petitioner's having labeled the relief sought as equitable in nature. *See id.* at 211 n.1 ("Without this rule of construction, a statutory limitation to injunctive relief would be meaningless, since any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction.").

Here, Livolsi has not even alleged that the restitution she seeks is equitable in nature. And such a claim would be unsustainable. As noted, to state a claim for equitable relief under § 502(a)(3), a beneficiary must (1) "identify a particular fund" at issue; (2) allege either that the defendant has "an obligation to segregate," or that the funds are segregated, "in a separate account"; and (3) allege that "the specifically identified funds . . . remain in the defendant's possession." *Est. of Close*, 2023 WL 8846562, at *2–3 (citing *Sereboff*, 547 U.S. at 363). Livolsi does not contend that any of these criteria are satisfied. Accordingly, consistent with *Knudson*, this Court declines to "perceive equitable clothing where the requested relief is nakedly contractual." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104 (2d Cir. 2005); *see also, e.g., Coan*, 457 F.3d at 263–64 (monetary relief in form of restitution unavailable as an equitable remedy under § 502(a)(3)); *N. Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Benefit Fund*, No. 22 Civ. 6087, 2023 WL 5956142, at *8–9 (S.D.N.Y. Sept. 13, 2023) (same); *see also, e.g., Fehn v. Grp. Long Term Disability Plan for Emps. of JP Morgan Chase Bank*, No. 7 Civ. 8321, 2008 WL 2754069, at *4 (S.D.N.Y. June 30, 2008) (same).

Livolsi's ERISA claim also fails to the extent she seeks injunctive relief barring Cigna "from further violating the WHCRA or relevant provisions of her Plan-Contract" or "requir[ing] [Cigna] to comply with the WHCRA and Livolsi's Plan-Contract in all matters relating to her breast cancer diagnosis and treatment." Compl. ¶ 209. That is because, "in determining the

31

propriety of a remedy, we must look to the real nature of the relief sought, not its label." *Gerosa*,

329 F.3d at 321; *Knudson*, 534 U.S. at 211 n.1 ("Without this rule of construction, a statutory

limitation to injunctive relief would be meaningless, since any claim for legal relief can, with

lawyerly inventiveness, be phrased in terms of an injunction."). In pursuing an order that would

require Cigna to comply with the WHCRA or her plan terms, Livolsi does not seek a remedy for

conduct distinct from ECAPS's "refusal to pay" for her reconstruction surgery. Compl. ¶ 206.

And the "relief requested" portion of the Complaint confirms that its claim for "equitable" relief

is essentially a repackaged damages claim. *See id.* at 63 ("On Count IX, for breach of fiduciary

duty under 29 U.S.C. § 1132(a)(3), injunctive relief and/or other equitable relief in favor of

Livolsi against Cigna Payor, *of a nature and in an amount to be determined at trial.*" (emphasis

added)). Thus, despite Livolsi's efforts to "couch the nature of her claim in equitable terms to

allow relief under § 502(a)(3)," the "gravamen of this action remains a claim for monetary

compensation and that, above all else, dictates the relief available." *Frommert v. Conkright*, 433

F.3d 254, 270 (2d Cir. 2006). Because the relief Livolsi seeks is unavailable under § 502(a)(3),

the Court dismisses the claim. *See, e.g.*, *Gerosa*, 329 F.3d at 321–23; *Guardian Flight LLC v.

Aetna Life Ins. Co.*, No. 24 Civ. 680, 2025 WL 1399145, at *13 (D. Conn. May 14, 2025)

(dismissing claim for equitable relief under § 502(a)(3) that was "in essence, a claim for

monetary compensation").[9]

---

[9] Although the parties did not brief the point, it is far from clear that Livolsi has Article III
standing to pursue her claim for injunctive relief to prevent "further violat[ions]" of the WHCRA
or her plan contract. ECAPS Compl. ¶ 209. The Complaint alleges that Livolsi already
underwent her breast reconstruction surgery. *Id.* ¶¶ 7–8. But to "meet the constitutional
minimum of standing to seek injunctive relief," past injury does not supply a predicate for
likelihood of future injury. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of
Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983)). Without a factual basis to believe that
Livolsi will suffer future violations of WHCRA or of her plan contract, she would lack standing
to pursue injunctive relief. *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past

### B.    No Surprises Act Claim

ECAPS seeks declaratory relief under the federal No Surprises Act ("NSA"), 29 U.S.C.

§ 1185e *et seq.* The NSA, enacted in 2020, was passed "to address the issue of patients facing

unexpected—and often exceedingly large—medical bills after they received treatment from out-

of-network providers." *Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't

of Health & Hum. Servs.*, No. 24-1884, 2025 WL 2045648, at *2 (2d Cir. July 22, 2025). The

Act prohibits out-of-network health care providers from billing healthcare plan members directly

for certain services. *See id.* It instead requires that services be reimbursed from the patient's

healthcare plan. *See id.* Salient here, the Act's "preventing surprise medical bills" provision

provides that where, as here, a nonparticipating provider such as ECAPS performs "non-

emergency services" to a patient at a "participating facilit[y]" for which "any benefits are

provided or covered by a group health plan," the group health plan "shall pay" a "total plan . . .

payment directly" to such non-participating provider "equal to the amount by which the out-of-

network rate" for such health care "services involved exceeds the cost-sharing amount imposed

under the plan." 29 U.S.C. § 1185e(b). If a provider and a healthcare plan cannot agree on an

appropriate compensation amount, the Act provides for an independent dispute resolution

("IDR") process in which a certified private arbitrator selects between compensation proposals

submitted by the parties. *See id.*

ECAPS seeks a declaratory judgment that (1) enforces an IDR determination awarding

ECAPS $3 million against Cigna; and (2) declares Cigna violated the NSA's prohibition against

"surprise medical bills." ECAPS Compl. ¶¶ 178, 184. Both claims are unavailing.

---

exposure to illegal conduct does not in itself show a present case or controversy regarding
injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

As to the first claim, ECAPS's request to enforce the IDR judgment overlooks that the NSA provides that an IDR award is automatically "binding upon the parties involved" and thus "*shall not be subject to judicial review*, except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the Federal Arbitration Act ("FAA").[10]  29 U.S.C. § 1185e(b)(5)(E) (emphasis added).  As is undisputed, this case does not fall within any of the statutory exceptions.  And based on that statutory text, all but one court to consider the question have held that there is no private right of action under the NSA to enforce IDR awards.  *See, e.g.*, *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 275 (5th Cir. 2025) ("The NSA expressly *bars* judicial review of IDR awards *except* as to the specific provisions borrowed from the FAA (sections which, again, Providers concede are inapplicable)." (emphasis in original)); *Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of New Jersey*, No. 25 Civ. 54, 2025 WL 1860241, at *5 (E.D.N.Y. July 2, 2025) ("[T]he NSA contains no express right of action to enforce or confirm an IDR award, nor does it contain an implied private right of action to do the same." (cleaned up)); *FHMC LLC v. Blue Cross & Blue Shield of Arizona Inc.*, No. 23 Civ. 876, 2024 WL 1461989, at *3 (D. Ariz. Apr. 4, 2024) ("An implied right of action is incongruous with such a detailed statutory scheme, in which judicial review is limited to specific instances."); *Med-Trans Corp. v. Cap. Health Plan, Inc.*, 700 F. Supp. 3d 1076, 1087 (M.D. Fla. 2023) (same), *appeal dismissed*, No. 24-10134, 2024 WL 3402119 (11th Cir. May 30, 2024). *But see Guardian Flight*, 2025 WL 1399145, at *8 ("[T]he NSA contains strong, mandatory language regarding health plans' and insurers' payment obligations and the 'binding' effect of IDR awards.").

---

[10] Unlike IDR determinations, "arbitration awards are not self-enforcing" and "must be given force and effect by being converted to judicial orders by courts." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (cleaned up).

ECAPS urges the Court to recognize an implied right of action within the NSA. *See* ECAPS Opp. at 30–34. But the Court, joining the substantial majority of courts to consider the issue, declines to do so. *See Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020) ("[I]mplied rights of action are disfavored."); *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 432 (2d Cir. 2002) ("A court . . . cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided."). The Supreme Court has instructed that an implied right of action is unavailable where Congress has provided an alternative method of enforcing that provision and where the "nature of [the relevant provision's] text" is "judicially unadministrable." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328–29 (2015); *see also id.* at 328 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." (cleaned up)). Here, the statute supplies an administrative remedy for NSA violations—the IDR process—which is itself, by statute, subject to oversight and enforcement by the U.S. Department of Health and Human Services ("HHS"),[11] *see* 29 § U.S.C. 1185e(c)(2) (delegating authority over the IDR process to the HHS Secretary); *Guardian Flight*, 140 F.4th at 277 ("The NSA's structure conveys Congress's policy choice to enforce the statute through administrative penalties, not a private right of action."). The only court to authorize a private right of action under the NSA acknowledged as much. *See Guardian Flight*, 2025 WL 1399145, at *6 (the NSA "does not . . . expressly create a private right of action to enforce these payment requirements. Instead, it creates the IDR process."). And beyond providing an alternative remedy, the statute expressly provides that IDR processes "shall not be

---

[11] CMS, a federal agency within HHS, assumed authority over the IDR enforcement process and has entered into collaborative enforcement agreements with state agencies. *See* Cigna Br. at 23 n.10 (citing CMS Ltr. NJ on CAA Enforcement & Dispute Resolution at 5 [https://perma.cc/2TK2-QKLN]; CMS Ltr. NY on CAA Enforcement & Dispute Resolution at 2–3 [https://perma.cc/24J7-PRK9].

subject to judicial review." 29 U.S.C. § 1195e(b)(5)(E)(i)(II).  The statutory text thus forecloses of a private right of action to enforce IDR determinations.

ECAPS's request for a declaration that Cigna violated the NSA is also not viable. ECAPS brings this claim under the DJA, 28 U.S.C. § 2201.  But, as noted, it is well-established that the DJA does not provide an independent cause of action.  *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("The Declaratory Judgment Act does not expand jurisdiction. Nor does it provide an independent cause of action. Its operation is procedural only—to provide a form of relief previously unavailable." (citing *Skelly Oil*, 339 U.S. at 671–72); *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) (DJA "does not create an independent cause of action" (citation omitted)).  And to the extent ECAPS seeks a declaration under the NSA itself, ECAPS has not, for the reasons above, shown that there is a private right of action under the NSA.  *See, e.g., Guardian Flight*, 140 F.4th at 275; *Farkas*, 2025 WL 1860241, at *5; *Los Robles Emergency Physicians Med. Grp. v. Stanford-Franz*, 2024 WL 2106951, at *2 (C.D. Cal. Feb. 8, 2024) ("While there is no clearly established law on the question, the Court finds that the No Surprises Act fails to provide a private right of action." (cleaned up)).[12]

The Court thus dismisses ECAPS's claims for relief under the NSA.

---

[12] The Second Circuit was recently presented with the question whether a cause of action against insurers lies under the NSA. *See Haller v. U.S. Dep't of Health & Hum. Servs.*, No. 22-3054, 2024 WL 290440, at *1 (2d Cir. Jan. 23, 2024).  The Circuit, however, "decline[d] to consider that argument for the first time on appeal." *Id.; see also id.* n.1 (a private right of action "might" or "might not" be available under the NSA).

### C.    Supplemental Jurisdiction

Having dismissed ECAPS's federal-law claims, and with no alternative basis for federal court jurisdiction over these claims,[13] the Court considers whether the exercise of supplemental jurisdiction over ECAPS's state-law claims is warranted.  It is not.

District courts have supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  Although supplemental jurisdiction is discretionary, it is "axiomatic" that a court "should decline to exercise jurisdiction over state-law claims" where, as here, "it dismisses the federal claims prior to trial." *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (although the exercise of supplemental jurisdiction is discretionary, the balance of factors ordinarily "will point toward declining jurisdiction over the remaining state-law claims." (citation omitted)).

The Court declines to exercise supplemental jurisdiction over ECAPS's state-law claims. *See, e.g.*, *Berkery v. Archdiocese of Hartford*, 352 F. App'x 487, 490 (2d Cir. 2009) ("[B]ecause the district court's subject matter jurisdiction was predicated on the federal questions presented by [plaintiff's] claims under ERISA . . . , it did not err in declining to exercise supplemental jurisdiction over plaintiff['s] state-law claims after dismissing the federal claims." (citing

---

[13] Diversity jurisdiction is absent here, because ECAPS and Multiplan, as pled, are both citizens of New York. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217–18 (2d Cir. 2016) ("Diversity jurisdiction under 28 U.S.C. § 1332 is proper only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." (citation omitted)).

*Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 393 (S.D.N.Y. 2006) (same). Although the Court has the discretion to exercise supplemental jurisdiction over the ECAPS Action, and therefore to consider these claims alongside those in the related Cigna Action, compelling reasons disfavor doing so.

First, ECAPS's claims were not brought as counterclaims to the Cigna Action, but rather, as a separate lawsuit under distinct legal theories against not just Cigna, but against third-party Multiplan. The existence of a separate, albeit related, lawsuit does not alone justify the exercise of supplemental jurisdiction over ECAPS's distinct state-law claims. *See, e.g.*, *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 653 (S.D.N.Y. 2017) ("While federal courts are equipped to examine common law claims such as breach of contract, comity dictates that such a cause of action is predominantly an issue of state law better suited for resolution in state court." (cleaned up)). Crucially, the gravamen of the ECAPS state-law claims is materially different from that of the Cigna Action. The Cigna Action is based on a theory of fraud and misrepresentation arising out of ECAPS's allegedly deceptive billing scheme. ECAPS's claims, by contrast, centrally involve repayments arising out of an alleged breach of a third-party contract to which Cigna was not a party. *See McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 4 (2d Cir. 2013) (fact of "differences in the elements" between the existing claims and remaining claims disfavors exercise of supplemental jurisdiction); *ÆSeries M v. Citibank N.A.*, 130 F. Supp. 3d 842, 852 (S.D.N.Y. 2015) (exercise of supplemental jurisdiction inappropriate where the remaining claims differ in terms of "the scope of the issues raised" or "in terms of proof").

Moreover, ECAPS brings a claim under CUTPA, a Connecticut state statute. That claim presents a "complex issue[] of state law" better suited for resolution in state court. 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of State law." (cleaned up)); *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998) (where "pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts"); *McBeth v. City of New York*, No. 23 Civ. 10389, 2025 WL 951439, at *12 (S.D.N.Y. Mar. 28, 2025) (declining to exercise supplemental jurisdiction on such basis). Indeed, as several courts have recognized, "[t]he nature of CUTPA litigation is complex," because "unfair trade practices typically involve a large number of consumers, sophisticated transactions, and a great amount of litigation effort." *Fed. Ins. Co. v. Mertz*, No. 12 Civ. 1597, 2017 WL 3206597, at *3 (S.D.N.Y. Apr. 14, 2017); *Falit v. Provident Life & Accident Ins. Co.*, No. 9 Civ. 1593, 2010 WL 2710478, at *2 (D. Conn. July 7, 2010) (describing CUTPA litigation as "complex"). "[P]rinciples of federalism and comity" thus here dictate that "these questions be left for decision by the state courts." *Valencia*, 316 F.3d at 306 (citation omitted); *Filteau v. Prudenti*, 161 F. Supp. 3d 284, 298 (S.D.N.Y. 2016) (so too holding).

The case is also at an early stage. There has not been any discovery taken. And the Court's familiarity with the case is based solely on the Complaint and the briefing on the instant motions. There are negligible, if any, efficiencies to be gained by the Court's exercise of jurisdiction, especially insofar as the Court's dismissal of ECAPS's federal claims, though instructive, would not inform the litigation to come over the balance of the state-law claims. *See, e.g.*, *MHS Cap. v. Goggin*, 193 F. Supp. 3d 304, 306 (S.D.N.Y. 2016) (declining to exercise

supplemental jurisdiction where "the case has not advanced to trial, to discovery, or at all past

the initial stage of filing the original Complaint" (citation omitted)); *In re Methyl Tertiary Butyl*

*Ether (MTBE) Prods. Liab. Litig.*, 613 F. Supp. 2d 437, 445 (S.D.N.Y. 2009) ("Because no

judicial resources have been invested in these matters, the interests of economy and convenience

in retaining supplemental jurisdiction are modest."); *Cedar Swamp Holdings, Inc. v. Zaman*, 487

F. Supp. 2d 444, 453 n.63 (S.D.N.Y. 2007) ("[A]t early stages in the proceedings, [there is] little

to be gained by way of judicial economy from retaining jurisdiction.").

The Court thus declines to exercise supplemental jurisdiction over ECAPS's state-law

claims. *See Henderson v. Bondi*, No. 24-1720-pr, 2025 WL 1078049, at *2 (2d Cir. Apr. 10,

2025) (where no federal claims remain and diversity jurisdiction is not alleged, district court "did

not abuse its discretion by declining to exercise supplemental jurisdiction over [plaintiff's] state-

law claims" (citing *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255,

262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the

early stages of litigation, courts should generally decline to exercise pendent jurisdiction over

remaining state law claims.")); *Nace v. Achievement & Guidance Centers of Am., Inc.*, 213 F.3d

626, 626 (2d Cir. 2000) (same).

## CONCLUSION

For the foregoing reasons, ECAPS's motion to dismiss Cigna's Complaint is granted in part and denied in part; Cigna's and Multiplan's motions to dismiss ECAPS's Complaint are granted in full. Each dismissal is without prejudice.

SO ORDERED.

*Paul A. Engelmayer*
_____
Paul A. Engelmayer
United States District Judge

Dated: August 14, 2025
       New York, New York